# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### Lake Charles Division

| | |
|---|---|
| SARAH BERMUDEZ<br>313 East Blackwell Street<br>Oakdale LA 71463,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTIAN ENTEPRISES OF<br>OAKDALE, INC.<br>207 Hospital Drive<br>Oakdale, LA 71463<br><br>D/B/A<br>BUDDY'S IGA<br>197 Hwy. 165 South<br>Oakdale, LA 71463<br><br>    Defendant. | Civil Action No.: _____<br><br><br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff Sarah Bermudez, by and through her attorneys, alleges as follows against Defendant Christian Enterprises of Oakdale, Inc., d/b/a Buddy's IGA ("Buddy's IGA" or "Buddy's" or "Defendant"):

## **NATURE OF THE CLAIM**

1. This action is brought to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.* and to remedy discrimination and retaliation Ms. Bermudez experienced as a result of her protected activity.

2. One of the managers at Buddy's IGA, Isaiah Robinson, routinely subjected female employees, including high-school-aged girls, to sexual advances, lewd comments about their bodies, and unwanted touching and intimidating behavior in the workplace.

3. Ms. Bermudez repeatedly advocated for the female employees, reported Mr. Robinson's behavior to Buddy's IGA management, and asked management to put a stop to it. Buddy's IGA disregarded Ms. Bermudez's complaints and took no remedial action.

4. Even as Buddy's IGA failed to take any steps to stop Mr. Robinson's egregious sexual harassment, Ms. Bermudez continue to oppose the harassment on behalf of her female coworkers.

5. As a result of Ms. Bermudez's protected activity including speaking with an attorney regarding the Title VII violations, managers subjected Ms. Bermudez to hostile treatment. For example, management changed her schedule to require her to work on the day she always took her daughter to New Orleans for oncology appointments; changed her schedule to a less desirable shift; unjustifiably criticized her performance; spread false rumors about her; and screamed and cursed at her. These abusive and intolerable conditions culminated in Ms. Bermudez's constructive discharge following an anxiety attack.

6. Through this action, Plaintiff seeks a determination that Defendant violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964; implementation of policies, including training, to protect employees from sexual harassment and retaliation; reinstatement, front and back pay, pecuniary and nonpecuniary compensatory damages, and reasonable attorney fees and expenses.

## PARTIES

7.  Plaintiff is a female citizen and resident of Oakdale, Louisiana. She was employed by Defendant from 2016 through September 6, 2019. Plaintiff is a protected person within the meaning of 42 U.S.C. § 2000e-2.

8.  Defendant is a Louisiana corporation with a principal address at 207 Hospital Drive, Oakdale, Louisiana 71463 and a mailing address of C/O Kirk Christian, P.O. Box 959, Oakdale, Louisiana 71463. Defendant operates a grocery store, Buddy's IGA, located at 197 Hwy. 165 South, Oakdale, Louisiana 71463. Defendant is an employer with at least 15 employees. Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3) because this is a civil action alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

10. This Court has personal jurisdiction over Defendant Buddy's IGA because, at all times relevant, Defendant was domiciled within this District at 207 Hospital Drive, Oakdale, Louisiana, 74163, and Defendant's physical place of business was located within this District at 197 Highway 165 South, Oakdale, LA 71463.

11. Venue is appropriate in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action occurred.

## EXHAUSTION

12. Plaintiff was constructively discharged from her position through the actions of Defendant, on September 6, 2019.

13. Plaintiff timely filed her charge with the Equal Employment Opportunity Commission ("EEOC") and received a notice of right to sue on March 26, 2021. A copy of the notice is attached as Exhibit A.

## FACTUAL ALLEGATIONS

14. Plaintiff Sarah Bermudez was employed by Defendant between 2016 and September 6, 2019.

15. For decades, working at Buddy's IGA has been a rite of passage for high school students and young adults in Oakdale. It is one of the "go-to" places for students and young adults to work.

### Ms. Bermudez Was Initially Recognized as an Excellent Employee

16. In approximately June 2016, Buddy's IGA hired Ms. Bermudez as a cashier.

17. At the beginning of her employment, the store managers and owner, Kirk Christian, often praised Ms. Bermudez's work ethic and applauded her dedication to her position. Buddy's IGA gave Ms. Bermudez a pay raise at the end of 2016 and again in 2017.

18. In 2017, Buddy's IGA management promoted Ms. Bermudez to a position in the store's deli department.

### Defendant Hired a Manager Who Egregiously Sexually Harassed Female Employees

19. In late 2017, Ms. Bermudez's work environment changed drastically when Buddy's IGA hired a new manager, Isaiah Robinson.

20. Almost as soon as he became a manager, Mr. Robinson engaged in sexual harassment, including of the young female employees by, among other things, making derogatory, lewd, and/or sexual comments about them and their bodies, inappropriately touching them, cornering them in remote areas of the building, exposing himself to them, and making sexual advances.  For example:

   a. Mr. Robinson inappropriately touched one 17-year-old female employee on multiple occasions, and "tried to get [her] to show him [her] tits and everything";

   b. Mr. Robinson made sexual advances towards a 16-year-old female employee and made suggestive comments like, "Girl, you know you're fine.  I don't know why you don't have a boyfriend."  Mr. Robinson told her she looked "beautiful" and made inappropriate comments about her clothing, especially on one occasion when she wore leggings.

   c. Mr. Robinson told another 16-year-old girl that he could not wait until she turned 18 years old because he wanted to make her his girlfriend.

   d. Mr. Robinson propositioned female employees, saying, "When are we going to hang out[,]" or "When are you going to let me hit it," which was a reference to having sex.

   e. Mr. Robinson made other sexually explicit comments to female employees, including comments about their breasts and sexual experience.

5

    f.     Mr. Robinson grabbed female employees' butts and walked behind them and touched them.

    g.     Mr. Robinson followed female employees to the women's restroom. He would also wait for female employees in the storeroom by the restroom and be there when they came out.

    h.     Mr. Robinson required female employees to go with him to the deli area away from everyone else, where there were no cameras and nobody could see or hear what was happening.

    i.     Mr. Robinson obtained female employees' cell phone numbers and sent them text messages after work.

    j.     Mr. Robinson whispered inappropriate comments in female employees' ears.

21.    Female employees were afraid to be around Mr. Robinson because of his sexual harassment and asked Ms. Bermudez for help. For example:

    a.     Multiple female employees asked Ms. Bermudez to accompany them to the women's restroom because Mr. Robinson would often follow them.

    b.     One female employee begged Ms. Bermudez to stay after the end of her shift because she was so afraid of being in the store with Mr. Robinson.

    c.     At least one female employee asked Ms. Bermudez to accompany her to speak with store management about Mr. Robinson's sexual harassment.

**Ms. Bermudez Openly Opposed Mr. Robinson's Sexual Harassment and Repeatedly Reported His Behavior to Management, but Defendant Failed to Take any Reasonable Steps to Stop It**

22. Ms. Bermudez earned a reputation for standing up for the female employees that Mr. Robinson sexually harassed.

23. Ms. Bermudez repeatedly reported Mr. Robinson's sexual harassment to store management, including Brian Thompson, William Sumbler, and store owner Kirk Christian. For example:

    a. On multiple occasions between late 2017 and July 2018, Ms. Bermudez reported to store managers Brian Thompson and William Sumbler that Mr. Robinson was sexually harassing female employees.

    b. On or around July 16, 2018, Ms. Bermudez accompanied a female employee to speak with store owner Kirk Christian and report Mr. Robinson's sexual harassment. Mr. Christian made Ms. Bermudez leave before he would speak with the employee. The female employee left the meeting crying and upset and shortly thereafter resigned.

    c. In July 2018, Ms. Bermudez expressly told Mr. Christian that Mr. Robinson sexually harassed his female subordinates and asked Mr. Christian to put a stop to Mr. Robinson's behavior. In response, Mr. Christian screamed that he did not have "time for this shit" and scolded Ms. Bermudez for complaining too much.

    d. On or around August 1, 2018, after accompanying a high-school-aged female employee to the restroom because she was afraid of Mr. Robinson, Ms. Bermudez notified store manager Brian Thompson about the incident. Mr. Thompson belittled her concern and directed Ms. Bermudez to return to work.

7

  e. On another occasion, Ms. Bermudez accompanied another female employee to the restroom in the back of the store because the employee was afraid Mr. Robinson would follow her. Another manager, Mr. Sumbler, instructed Ms. Bermudez to go back to the deli department and told her that nothing would happen to the female employee while she was in the bathroom.

  f. In May 2019, after Mr. Robinson sexually harassed a 16-year-old cashier, Ms. Bermudez called the girl's mother and told her about the incident.

  g. In May 2019, in coordination with other female employees, Ms. Bermudez spoke with an attorney about Mr. Robinson's sexual harassment. Management learned about this almost immediately. On or about May 20, 2019 and again in June 2019, manager Brian Thompson angrily confronted Ms. Bermudez about speaking with an attorney.

  h. In approximately late May or June 2019, Mr. Robinson told Ms. Bermudez that nothing was going to happen to him, referenced other women who left employment at Buddy's IGA, and told Ms. Bermudez that eventually she would not be working there either.

24. Defendant failed to investigate or denounce the sexual harassment Ms. Bermudez opposed.

### Other Employees Notified Defendant About Mr. Robinson's Sexual Harassment, but Defendant Failed to Take Any Reasonable Steps to Stop It

25. Other female employees reported Mr. Robinson's sexual harassment to store management.

26.     In approximately summer 2018, one female employee reported her concerns about Mr. Robinson to store owner Kirk Christian.  Instead of a private conversation, Mr. Christian took the female employee to the back of the store with the other managers, including Brian Thompson, William Sumbler, and Isaiah Robinson.  The female employee reported that Mr. Robinson was harassing her and other female employees, and Mr. Christian told Mr. Robinson, "We told you to leave those little girls alone."  Nothing changed.

27.     Also in summer 2018, a high-school-aged female employee became visibly upset and quit her job after an incident with Mr. Robinson.  She loudly announced that there was a pedophile working in the store, in reference to Mr. Robinson, so that employees or customers in the store could hear.

28.     On or about May 17, 2019, after Mr. Robinson sexually harassed a 16-year-old female employee, the girls' mother, LeAnn Mezzacapo, called store manager Brian Thompson and told him Mr. Robinson made inappropriate comments to her daughter and was sexually harassing the high school females who worked at Buddy's.  Later that evening, Mr. Thompson texted Ms. Mezzacapo, saying, "I called and I will take care of it I'm sorry[.]"

29.     On or about May 22, 2019, Ms. Mezzacapo spoke with an Oakdale, Louisiana attorney, Judi Abrusley, regarding Mr. Robinson's sexual harassment of the female employees at Buddy's IGA.  On or about May 23, 2019, Ms. Abrusley went to Buddy's IGA and met with store owner Kirk Christian about the issue of Mr. Robinson sexually harassing female employees.

30.     On or about May 23, 2019, Mr. Christian left a voicemail message for LeAnn Mezzacapo, stating, in part:

> Just kind of getting some knowledge of things going on up here that aren't right and I wanted to visit with you about them. I talked to Judi and I talked to Isaiah and I wanted to talk to you.

Mr. Christian continued, stating:

> If you don't call back, rest assured this problem is addressed and will not be tolerated, and I'm sorry it happened.

31. On or about May 24, 2019, LeAnn Mezzacapo spoke with Mr. Thompson again and discussed the fact that Mr. Robinson was sexually harassing other young women at Buddy's IGA. Mr. Thompson responded that he knew who Ms. Mezzacapo was talking about and named a female employee Ms. Mezzacapo did not even realize was among the young women being sexually harassed.

32. On or about May 24, 2019, Ms. Mezzacapo's daughter resigned from Buddy's IGA, citing Mr. Robinson's "recent harassment" in her resignation letter.

33. Defendant failed to investigate, denounce, or stop the sexual harassment.

**Defendant Created a Climate of Retaliation Against Anyone Who Opposed Mr. Robinson's Sexual Harassment or Caused Any Problems for Management**

34. One female former employee who was sixteen-eighteen years old when she worked at Buddy's IGA from 2019-2020 reported that when female employees complained about Mr. Robinson, Mr. Christian retaliated against them and tried to get them to quit, either by cutting their hours or by trying to make them uncomfortable working at the store. She explained that when Buddy's management learned she spoke with an attorney about Mr. Robinson's sexual harassment, management cut her hours.

35. One former female employee who was 16-years old at the time commented to a friend about the way Mr. Robinson intimidated the girls he harassed, saying:

> Thats so sad how he intimidates the girls he harasses. Last night he was the closing manager and laughed every time he walked passed me and finally I was like what's so funny and he said this whole situation with you and your best friend because nothing is gonna happen.

36. It was well-known that Ms. Bermudez actively opposed Mr. Robinson's sexual harassment. On or about May 24, 2019, the mothers of two female employees exchanged messages in which they discussed their understanding that Ms. Bermudez had contacted the "labor board" about Mr. Robinson and that Ms. Bermudez "is worried about losing her job."

## Defendant Severely Mistreated and Retaliated Against Ms. Bermudez and Constructively Discharged Her

37. In approximately late May 2019, Buddy's IGA became aware that Ms. Bermudez spoke with an attorney about Mr. Robinson sexual harassment of female employees.

38. Buddy's IGA began to severely mistreat Ms. Bermudez by, among other things, subjecting her to harsh scrutiny, changing her work schedule, spreading derogatory rumors about her, and failing to investigate her complaints.

39. In late May 2019, store manager Brian Thompson interrogated Ms. Bermudez in a threatening manner and demanded to know whether she spoke to an attorney.

40. Mr. Thompson confronted Ms. Bermudez a second time in approximately early June 2019 and asked her again whether she had spoken to an attorney about Mr. Robinson's sexual harassment.

41. In approximately June 2019, Buddy's IGA changed Ms. Bermudez's work schedule. Prior to May 2019, Buddy's IGA had allowed Ms. Bermudez to schedule Tuesdays as her day off so that she could take her daughter to regular oncology appointments in New Orleans. After becoming aware that Ms. Bermudez spoke with an attorney and continued opposing Mr. Robinson's sexual harassment, Buddy's IGA intentionally scheduled her to work on Tuesdays.

42. In approximately June 2019, Buddy's IGA began to schedule Ms. Bermudez to work longer, 12-hour shifts, which interfered with her ability to care for her children. She had not been required to work these shifts before.

43. Beginning in approximately June 2019, Buddy's IGA began to ridicule Ms. Bermudez's work performance, even though she had never been reprimanded previously. Managers suddenly began calling her "lazy" and stated she "did not want to work."

44. On several occasions, Ms. Bermudez discovered upon arriving at work that the deli department where she worked had been "trashed" after she left, even though she had cleaned it up the night before during closing. Specifically, she arrived to find that someone had scattered garbage and tracked footprints across the floor and scattered leftover food across the countertops. When Ms. Bermudez reported this to management, managers simply instructed her to clean up the mess.

45. On September 6, 2019, Ms. Bermudez approached Mr. Christian to request that he endorse a stay-away order against her husband's former spouse after the former spouse stormed into the grocery store and loudly and publicly cursed at Ms. Bermudez during her shift. Mr. Christian became enraged and yelled profanities at Ms. Bermudez. Mr. Christian threw a bag of

beef jerky across the room and screamed that Ms. Bermudez had "too many fucking issues." Mr. Christian ordered Ms. Bermudez to "get the fuck out."

46. In response to Mr. Christian's explosion, Ms. Bermudez experienced an anxiety attack and left the grocery store crying frantically. After this incident, Ms. Bermudez could no longer tolerate the objectively abusive environment created by Defendant. Buddy's IGA had created a working environment so intolerable that Ms. Bermudez felt compelled to resign and was constructively discharged from her position.

47. Defendant's retaliation had a detrimental impact on Plaintiff and her health and well-being.

## STATEMENT OF THE CLAIMS

### COUNT I

**Title VII – Hostile Work Environment Based on Sex and/or Retaliation**

48. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint.

47. Based upon the numbered paragraphs set forth above, Ms. Bermudez claims that Defendant required her to work in an environment in which female employees were compelled to endure sexual harassment. Ms. Bermudez was repeatedly required to protect and assist girls from a perpetrator against whom they and she were defenseless.

48. Ms. Bermudez engaged in conduct protected by Title VII when she opposed Mr. Robinson's sexual harassment of female employees.

49. After she engaged in this protected activity, the Defendant retaliated against Ms. Bermudez through a series of materially adverse actions that would dissuade a reasonable person

from engaging in protected activity. These retaliatory actions, which culminated in her constructive discharge, included, among other things: (1) changing her schedule to require her to work on the day she always took her daughter to New Orleans for oncology appointments; (2) changing her schedule to a less-desirable shift that made it more difficult for Ms. Bermudez to take care of her children; (3) confronting her about speaking with an attorney; (4) failing to investigate her complaints or take them seriously; (5) telling Ms. Bermudez nothing is going to happen with her complaints; (6) unjustifiably scrutinizing and criticizing her performance; (7) spreading false rumors about her; (8) allowing and/or causing her work space to be trashed; (9) subjecting her to hostility such as yelling and screaming; and (10) throwing food at Ms. Bermudez and ordering her to "get the fuck out."

50. In addition to other direct and circumstantial evidence of motive such as comments made by Buddy's IGA's managers and owner, the temporal proximity between Ms. Bermudez's protected activity and the Defendant's retaliatory actions demonstrates causal connection.

51. As a direct and proximate result of the sexually harassing environment in which Ms. Bermudez was required to work, and the retaliation to which she was subjected, Ms. Bermudez lost her employment and experienced injuries and incurred damages for which she is entitled to compensation.

## COUNT II

### Title VII – Constructive Discharge

52. Plaintiff repeats and re-alleges all previous paragraphs of this Complaint.

53. As a result of Ms. Bermudez's protected activity, Buddy's IGA took materially adverse actions against her, including, among other things: (1) changing her schedule to require her to work on the day she always took her daughter to New Orleans for oncology appointments; (2) changing her schedule to a less-desirable shift that made it more difficult for Ms. Bermudez to take care of her children; (3) confronting her about speaking with an attorney; (4) failing to investigate her complaints or take them seriously; (5) telling Ms. Bermudez nothing is going to happen with her complaints; (6) unjustifiably scrutinizing and criticizing her performance; (7) spreading false rumors about her; (8) allowing and/or causing her work space to be trashed; (9) subjecting her to hostility such as yelling and screaming; and (10) throwing food at Ms. Bermudez and ordering her to "get the fuck out."

54. As a result of Ms. Bermudez's protected activity, Buddy's IGA made her working conditions so intolerable that a reasonable employee would feel compelled to resign. Indeed, Buddy's IGA's harassment and humiliation of Ms. Bermudez was calculated to encourage her to resign.

55. As a direct and proximate result of Buddy's IGA's actions, Ms. Bermudez was constructively discharged on September 6, 2019, lost her employment, and experienced injuries and incurred damages for which she is entitled to compensation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief in this action as follows:

A. Declare that the Defendant violated the Plaintiff's rights under Title VII of the Civil Rights Act of 1964;

B. Order the Defendant to adopt and implement policies, procedures, and practices that will protect female employees from sexual harassment and protect employees from retaliation for engaging in protected activity;

C. Retroactively reinstate Plaintiff with full backpay, benefits, and correction of records;

D. Award Plaintiff back pay, with interest, and front pay;

E. Award Plaintiff pecuniary and non-pecuniary compensatory damages;

F. Order the Defendant to pay the Plaintiff's reasonable attorneys' fees, costs, and expenses;

G. Award pre- and post-judgment interest; and

H. Order all other legal and equitable relief as many be just and proper.

## JURY DEMAND

Plaintiff requests a jury trial for all claims that may be tried to a jury.

DATED:  June 23, 2021

Respectfully Submitted,

_/s/John Adcock_
John Adcock
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 70119
T: (504) 233-3125
F: (504) 308-1266
Email: jnadcock@gmail.com


Heidi R. Burakiewicz (*Pro Hac Vice* Pending)
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Ave. NW, Suite 1000
Washington, DC 20006
T: (202) 331-9260
F: (877) 219-7127

Email: hburakiewicz@kcnlaw.com


*Counsel for Plaintiff*